**LAW AND EQUITY COURT OF THE CITY OF RICHMOND**

Bernard Christian Slaughter

v.

Frank S. Duling, etc., et al.

May 3, 1972

BY JUDGE A. CHRISTIAN COMPTON

Enclosed you will find a copy of the order entered today dismissing this suit as to all defendants. The court having sustained the demurrer on behalf of Andrew J. Winston as City Sergeant for the City of Richmond on February 8, 1972, this order carries out that prior ruling. For the reasons to be now stated, the court sustains the plea of governmental immunity of the defendant City of Richmond and sustains the plea of the statute of limitations filed on behalf of the defendants Duling, Parks and Clarke.

In this action, which was filed in this court on January 19, 1972, the plaintiff seeks recovery of the defendants in damages for alleged personal injuries which he sustained as the result of alleged negligent and intentional acts of the defendants which occurred during the period from January 11, 1970, to and including January 19, 1970.

The plaintiff alleges that during the early morning hours of January 11, he had been exposed to the cold weather of that day, following which exposure he noticed that he could not straighten any of his fingers or thumbs and that they were beginning to swell and blister and that he had little feeling in any of his fingers. He asserts that while en route to a hospital for emergency treatment of his fingers, he suffered a mild epileptic seizure and the next thing he remembers is finding himself in the "police lock-up" after having been arrested and charged by a Richmond City Police Officer with being drunk in public. He alleges that he was arrested at 2:30 a.m. on January 11 and that he stayed in the "lock-up" until January 12, when he was tried on the

charge in the Police Court of the City of Richmond, found guilty and sentenced to a fine of ten dollars or fifteen days in the City Jail.

He asserts that on January 12 he was transported to the City Jail where he remained until January 19, 1970.

He further alleges that during all of this period of time from his arrest on January 11 to January 19, the condition of his fingers steadily deteriorated and that on each of the days he repeatedly requested medical attention, which, he says, was denied him. He further asserts that during this whole period of time the worsening condition of his fingers was known to the defendants as the result of his complaints and because each day his hands were examined by the guards at each location.

The plaintiff further asserts that on January 19, 1970, he was told that "the judge" had ordered him released, at which time he again asked at the jail to be taken to a doctor for treatment of his fingers, but he was told that he was free to leave the City Jail, which he did.

He further asserts that after he was released he went to the hospital emergency room where he was immediately admitted and placed in the burn ward at which time, because of the condition of his fingers, a decision was made to amputate nine of them. He further asserts that the tenth finger was not deemed damaged enough to warrant amputation but that its upper portion will be lost over a period of time.

The defendants Duling and Parks are sued for their alleged negligent and intentional failure to afford the plaintiff medical treatment while he was held in the "police lock-up." The defendants Duling and Clarke are sued for alleged negligent and intentional failure properly to train, instruct, supervise and control their subordinates regarding their duty to provide needed medical treatment to those in the "police lock-up."

The defendant Winston was sued because of the alleged failures of his predecessor in office to afford the plaintiff medical treatment and properly to instruct subordinates in affording medical attention at the City Jail. As stated, the court has previously ruled that Winston should be dismissed as a party since he did not hold the office of City Sergeant of the City of Richmond during the period of time out of which this cause of action arises, and the allegation as to him is stated here merely to afford continuity in this discussion of the allegations of the motion for judgment setting forth this claim.

The defendant City of Richmond is sued for its failure to furnish medical treatment to the plaintiff and its failure properly to instruct its

employees regarding the duty to provide medical treatment at the "City's detention facilities." This apparently is an allegation which seeks to impose liability upon the City for its alleged failures which took place both at the "police lock-up" and the City Jail.

In the recital of the facts set forth in the motion for judgment, it should be emphasized that no allegation is made of any wrongdoing by the defendants Duling, Parks and Clarke subsequent to the date when the plaintiff was taken from the "police lock-up" to the City Jail, which was on January 12, 1970. The plaintiff has alleged wrongdoing as to the former City Sergeant from January 12 to and including January 19, 1970. The plaintiff seeks to hold the City liable for alleged failures of it or its employees for the whole period of time from the date of his arrest on January 11 to and including January 19, 1970.

### Plea of the Statute of Limitations

The pertinent part of the statute of limitations applicable to this suit requires that every action for personal injuries in this State "shall be brought within two years next after the right to bring the same shall have accrued." Code § 8–24. In response to the plea of the statute of limitations of the aforesaid defendants, the plaintiff takes the position that the cause of action herein did not accrue until January 19, 1970, because the damage did not occur to the plaintiff until he went into the hospital on that day and had the fingers amputated. He asserts that he is entitled to have the opportunity to present expert medical testimony as to just when the wrong occurred which caused the fingers to be amputated. He argues that the acts of the defendants accumulated during the period of time when he was in custody to result in the wrong which occurred on January 19, 1970, exactly two years prior to the filing of this suit.

The central issue here is whether the plaintiff's right to bring his action accrued at the time his fingers were amputated or whether his right accrued at any prior time during his custody. If the right accrued earlier than January 19, 1970, as to Duling, Parks and Clarke, their plea is good. The court holds that the plaintiff's right of action came into being as to Duling, Parks and Clarke on January 11, 1970, when he alleges he was refused medical treatment for a condition which was apparent and known to these defendants. *Caudill* v. *Wise Rambler*, 210 Va. 11 (1969); *Hawks* v. *DeHart*, 206 Va. 810 (1966); *Street* v. *Consumer Min. Corp.*, 185 Va. 561 (1946). See also *Sides* v. *Richard*

*Machine Works, Inc.*, 406 F.2d 445 (4th Cir. 1969); *Barnes v. Sears, Roebuck and Co.*, 406 F.2d 859 (4th Cir. 1969).

The gravamen of the plaintiff's claim is that had he been furnished medical attention at some point in time prior to the time when he reported to the emergency room of the hospital after being released from the City Jail, it would not have been necessary for his fingers to have been amputated. He alleges, in effect, that when medical attention was refused to him after his first demand for it, which was made on January 11, the condition of his fingers steadily deteriorated and the several alleged failures to give him this needed medical attention over the period of time to January 19 accumulated and resulted in the loss of these fingers on that date.

Virginia is committed to the rule that in a personal injury action the limitation on the right to sue starts to run when the wrong is done and not when the plaintiff discovers that he has been damaged. In *Street*, the plaintiff's decedent died as the result of contracting silicosis while working as a miner, during the course of which employment he inhaled silica rock dust. He had been occupied as a driller from 1928 until, with a slight exception, he terminated his employment in 1936. During this time he inhaled the dust, and in 1940 the disease was disclosed by x-rays. The disease was diagnosed as having been contracted from the dust and having existed probably for ten to fifteen years. The plaintiff's decedent died of the disease in 1942, and suit was brought in 1944 for his death. The negligence charged was the employer's failure to provide him protection against breathing the contaminated air. Under the one-year statute of limitation which existed at that time, the action was dismissed as being too late, and the tort was held to have been committed not later than 1936 when the plaintiff's decedent left the mine. In pointing out that Street's right to bring an action for his alleged injuries accrued when the wrong was done to him, that is, at the time that he breathed the contaminated air, our Supreme Court stated as follows:

> Therefore, as a general rule, when an injury, though slight, is sustained in consequence of the wrongful or negligent act of another and the law affords a remedy therefor the statute of limitations attaches at once. It is not material that all the damages resulting from the act should have been sustained at that time and the running of the statute is not postponed by the fact that the actual or substantial damages do not occur until a later

date. The act itself is regarded as the ground of the action and is not legally severable from its consequence. The statute then begins to run, and not from the time of the damage or discovery of the injury. 185 Va. at 566.

In the case under consideration, the plaintiff had a right to bring his action for failure to provide medical attention upon the occurrence of the first incident of refusal of medical attention because, as the plaintiff alleges, these failures accumulated and contributed to the result of the alleged wrongs, that is, the amputation of his fingers. The plaintiff here received damage upon each refusal (because his condition deteriorated more) just as Street was damaged each time he inhaled the silica rock dust. Even though at each of these times of refusal the damage to the plaintiff was slight, nevertheless, according to his allegations, he sustained damage and, as pointed out in *Street*, it is not material that all of the damages resulting from the wrongful act did not occur until a later date.

As Judge Bryan points out in *Sides*, for a personal injury claim to become actionable there are four "indispensable" elements: (1) a legal obligation of the defendant to the claimant; (2) a commission or omission by the defendant breaching that duty; (3) negligence of the defendant occasioning the breach; and (4) harm to the claimant as a proximate consequence of the breach. 406 F.2d at 446. In his motion for judgment in this case, the plaintiff has made allegations to support all four of the aforesaid elements and having done this, his pleading fully sets forth the basis for his claim, and there is no reason to allow the plaintiff to present medical testimony to elaborate on the time when his damage occurred when such fact is clearly set forth in his pleading. Moreover, by the plaintiff's own allegations, the defendants Duling, Parks and Clarke, having supervision over the "police lock-up" and not the City Jail, did not have the plaintiff in their custody subsequent to January 12, 1970, and any wrongs committed by them prior to January 12 fall outside of the two-year period of limitation.

While the principles to be applied here are the same as set forth in *Sides*, *Barnes* and *Caudill* wherein different results were reached, the facts here differ from those cases. They arose out of personal injuries resulting from alleged defects in the manufacture of the instrumentalities causing the injuries. The questions of the statute of limitations in those cases turned on whether the cause of action accrued at the time of the manufacture and/or sale of the instrumentality or at the time of

the resulting injury to the plaintiff. The reasoning of those cases is illustrated in *Caudill* wherein it was held that at the time the plaintiff purchased the automobile with defective steering mechanism, the alleged breach of the implied warranty of fitness occurred and she had then a cause of action against the defendants for property damage and a potential cause of action for personal injuries. Her right to recover damages for personal injury accrued at the time of the accident when she was injured. 210 Va. at page 13.

In this case, the plaintiff was damaged each time medical attention was refused him and this slight damage during the days before January 19, 1970, culminated in the amputation of the fingers on that day. In *Hawks*, the plaintiff was damaged by the negligence of the defendants in 1946 when the surgical needle was left in her neck, and her suit brought in 1963 was barred by the statute of limitations even though she could not be charged with knowledge of that wrong until 1962. In *Street*, as stated, the right of action accrued no later than 1936, which was his last exposure to the silica rock dust, because he had suffered damage prior to that time. See also *Housing Authority* v. *Laburnum Corp.*, 195 Va. 827 (1954), to the same effect.

For the reasons stated above, the plea of the statute of limitations as it applies to the defendants Duling, Parks and Clarke is sustained.

We now turn to the application of the plea of the statute of limitations to the defendant City of Richmond. At the outset, it should be noted that the court is assuming for the purposes of this discussion, but not deciding, that there is some legal responsibility upon the City as the result of the alleged acts of the other defendants. As to the responsibility of the City arising out of the acts of Duling, Parks and Clarke, what has been heretofore said would equally apply to the City for the same reasons as to all acts which occurred prior to January 19, 1970.

Again, assuming, but not deciding, that there is some liability on the City of Richmond for acts of the City Sergeant which occurred on January 19, 1970, the plea of the statute of limitations as to the defendant City of Richmond would not be sustained. If there existed no other legal basis to relieve the City of liability, the plaintiff would have a right to proceed against the City (keeping in mind the assumption aforesaid) for any damage resulting to him from the alleged acts of wrongdoing which occurred on January 19, 1970, which were a proximate cause of any injuries or damages to the plaintiff. This, of course, brings us to the discussion of the plea of governmental immunity.

### Plea of Governmental Immunity

This issue in this case is clearly controlled by the case of *Franklin* v. *Town of Richlands*, 161 Va. 156 (1933). If it is assumed that the City of Richmond is responsible for the maintenance and operation of the City Jail, such responsibility, if any, does not subject it to liability to the plaintiff here. The maintenance of such a place of confinement is a purely governmental function, it being a part of the public duty to suppress disorder and crime, and a municipality incurs no more liability for wrongdoing in connection therewith than in the case of its other governmental duties. 161 Va. at page 158.

The plaintiff argues that *Franklin* must be restricted to its facts and that the decision there deals only with an allegation of failure to maintain the jail from a standpoint of cleanliness. Such a position cannot be sustained inasmuch as the immunity of the municipality is based on the nature of the function it is performing and not upon the specific act of negligence charged. See also 63 C.J.S., *Municipal Corporations*, § 904, page 310; *City of Atlanta* v. *Hurley*, 65 S.E.2d 44, 83 Ga. App. 879 (Ga. 1951), *cert. dism.* 67 S.E.2d 571, 208 Ga. 457, *cert. den.* 72 S. Ct. 650, 343 U.S. 917, 96 L. Ed. 1331, *cf. Dunham v. Village of Canisteo, et al.*, 104 N.E.2d 872 (N.Y. 1952), wherein a municipality was held liable under facts similar to the case at bar but in that jurisdiction municipal corporations no longer enjoy sovereign immunity. Any wrongful acts with which the defendant City of Richmond may be charged which occurred on January 19, 1970, while not barred by the statute of limitations, is barred because the City is immune from liability and damages for injuries sustained by reason of the improper exercise of a purely governmental power. This same reasoning would, of course, apply to all of the alleged wrongful acts which occurred prior to January 19, 1970, when the plaintiff was in custody in the "police lock-up."

During the argument of these motions orally, the court raised the question of whether or not there is liability upon the defendant municipality in view of the allegations of intentional and wanton conduct by the City "directly" and "through its employees, agents and subordinates." No case has been found in Virginia on this point. The cases elsewhere hold that the liability, or lack of liability, of the municipality in connection with wilful torts seems to have its basis upon the same foundation as non-wilful torts, and, therefore, a municipality is not liable for the wilful act of its agents if the function performed was a

governmental one. 57 Am. Jur. 2d, *Municipal, etc.*, *Tort Liability*, § 90, page 101. See *Stouffer* v. *Morrison*, 162 A.2d 378 (Pa. 1960). All cases found wherein the municipal corporation is held liable for wilful acts are in jurisdictions where the doctrine of governmental immunity has been abrogated and the municipality is held liable on the doctrine of respondeat superior. E.g., *City of Miami* v. *Simpson*, 177 So. 2d 435 (Fla. 1965).

In view of what has been said herein, it is not necessary for the court to pass upon the other issues raised by the defendants herein.