PRESENT: Hassell, C.J., Lacy, Keenan, Koontz, Kinser, and
Lemons, JJ., and Carrico, S.J.

GORDON FLETCHER HARRELL, JR.

                                        OPINION BY
v.  Record No. 021419          JUSTICE DONALD W. LEMONS
                                        April 17, 2003
CITY OF NORFOLK


          FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                   Junius P. Fulton, III, Judge

     In this appeal, we consider whether the trial court erred
by granting the City of Norfolk's special plea in bar and
dismissing a motion for judgment for personal injuries on the
ground that the alleged negligence concerned maintenance of a
traffic regulatory device which involves a discretionary
governmental function, invoking sovereign immunity from suit.

                   I. Facts and Proceedings Below

     On August 30, 1999 at approximately 2:30 p.m., Gordon
Fletcher Harrell, Jr. ("Harrell") was crossing the intersection
of Ocean Avenue and Cape View Street in the City of Norfolk.  He
slipped and fell while walking on the surface of white material
used to mark the pedestrian cross-walk.

     Harrell filed a motion for judgment against the City of
Norfolk (the "City") requesting damages for personal injuries,
alleging that the City had failed to safely maintain its streets
and cross-walks, or in the alternative, that it had failed to
warn pedestrians of any unsafe conditions.  In answers to the

City's requests for admissions, Harrell admitted that the "slippery or slick condition of the material used for the pedestrian walkway" was "a contributing factor" to his fall.

The trial court granted the City's special plea in bar and dismissed Harrell's motion for judgment, holding that the City had immunity from suit because "the roadway marking which allegedly caused the plaintiff's injury was a traffic regulatory device whose installation and maintenance was part of the City's governmental function of the regulation of traffic." Harrell appeals the adverse judgment of the trial court.

## II. Analysis

A municipality's immunity from suit depends on whether it was exercising a governmental or proprietary function.

> In Virginia a municipal corporation is clothed with a two-fold function — one governmental and the other proprietary. A municipality is immune from liability for failure to exercise or for negligence in the exercise of its governmental functions. It may be liable, just as a private individual or corporation, for the failure to exercise or for negligence in the exercise of its proprietary functions.

> Therefore, if the operations of the City of Norfolk, during the course of which the plaintiff was injured, were being performed by the City in the exercise of a governmental function, the City is immune from liability and the plaintiff cannot recover.

Fenon v. City of Norfolk, 203 Va. 551, 555, 125 S.E.2d 808, 811 (1962) (internal citation omitted).

2

Harrell acknowledges that the City was acting in its governmental capacity in the planning and construction of its public streets and sidewalks.  Further, Harrell conceded in oral argument that the white marking pattern constituting the pedestrian cross-walk was a traffic regulatory device.  However, Harrell argues that the City's duty to maintain this cross-walk, and its streets in general, in a safe condition, free from defects and obstructions falls into the category of a proprietary function.  To support his position, Harrell relies on City of Norfolk v. Hall, 175 Va. 545, 552, 9 S.E.2d 356, 359 (1940), where we held that "[a]lthough [a city] is not an insurer against accidents on its streets, a city is liable for injuries sustained by reason of its failure to keep them in a reasonably safe condition for persons who exercise ordinary care and prudence for their own safety."

However, we have previously held that "not every municipal activity related to street maintenance is proprietary." Transportation, Inc. v. City of Falls Church, 219 Va. 1004, 1005, 254 S.E.2d 62, 63 (1979).  In Transportation, Inc., a faulty traffic signal caused an accident resulting in personal injury, giving rise to a suit against the City of Falls Church. We held that the City was entitled to governmental immunity because the regulation of traffic is a governmental function.

3

*Id.* at 1006, 254 S.E.2d at 64. In addition, we have held that roadway markings fall into the same category as traffic lights:

> Traffic lights, blinking lights, warning signals, <u>roadway markings</u>, railings, barriers, guardrails, curbings, and like devices are all designed to control and regulate traffic and to insure its orderly and safe flow on the streets. A determination of the need for such devices . . . calls for the exercise of discretion on the part of the city. In the exercise of that discretion and in making a judgment, the city is performing a governmental function and is not liable for its negligent performance of the function.

<u>Freeman v. City of Norfolk</u>, 221 Va. 57, 60, 266 S.E.2d 885, 886 (1980) (emphasis added).

Harrell argues correctly that a municipality's failure to maintain roadway surfaces in a manner safe for travel is a proprietary function which does not entitle the City to governmental immunity. However, we draw a distinction between the potholes, depressions, and dips we have found to constitute a proprietary function and traffic regulatory devices which constitute a governmental function. In <u>Hall</u>, 175 Va. at 553-54, 9 S.E.2d at 360, we held that repair of two severe depressions or dips in the road fell under the city's maintenance duties and were a proprietary function. However, <u>Hall</u>, involved maintenance of the general road surface, but the case before us involves maintenance of a traffic regulatory device.

4

The traffic regulatory device at issue in this case is a pedestrian cross-walk which is delineated by two white lines that create a path for pedestrians to cross the street when they are directed to do so by the traffic signal. We stated the following in Transportation, Inc., 219 Va. at 1006, 254 S.E.2d at 64 (citations omitted):

> [T]he repair of a malfunctioning traffic signal bears some relationship to street maintenance and displays, therefore, a characteristic of a proprietary function. But a system of signals is designed to regulate traffic, and its dominant purpose is to reduce loss of life, limb, and property by preventing vehicular and pedestrian accidents at intersections. Thus, in the activity of maintaining traffic signals, as with the removal of the fallen trees in Fenon, there is involved "the purpose of protecting the general public health and safety," a distinguishing feature of a governmental function. And, "where governmental and proprietary functions coincide, the governmental function is the overriding factor."

Our holding in Transportation, Inc. resolves the question presented in this appeal. Accordingly, the judgment of the trial court will be affirmed.

Affirmed.